# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

LORENZO JOHNSON,

        Defendant-Appellant.

UNPUBLISHED
January 14, 2016

No.  323312
Wayne Circuit Court
LC No.  14-003623-FH

Before:  SAAD, P.J., and WILDER and MURRAY, JJ.

PER CURIAM.

Defendant appeals his jury trial conviction of possession of a firearm during the commission of a felony, second offense (felony-firearm), MCL 750.227b(1).  The jury acquitted defendant of the accompanying two counts of felon in possession of a firearm (felon-in-possession), MCL 750.224f.  Defendant was sentenced to the mandatory five-year term of imprisonment for the felony-firearm conviction.  For the reasons provided below, we affirm.

The police were looking for defendant's son, Lorenzo Grayse, who was wanted on multiple arrest warrants.  After running Grayse's name through LEIN and the Secretary of State database, the police determined that Grayse lived at 14747 Liberal in Detroit, which unbeknownst to them was where defendant resided.  While executing the arrest warrants at the house in search of Grayse, one of the officers looked into one of the unfurnished bedrooms and saw two firearms lying on the floor in plain view.  Afterward, the police discovered Grayse hiding in the basement.  When police questioned defendant about the firearms, he stated that his brother owned them, but after his brother recently died, they were now his.  Before trial, defendant moved to suppress the evidence of the firearms on the basis that the search was in violation of the Fourth Amendment because, even though Grayse was found at the house at the time of the raid, Grayse did not live there.

## I.  MOTION TO SUPPRESS

Defendant challenges the trial court's decision to deny his motion to suppress the evidence of the two firearms that were seized from his home during a police raid.  This Court reviews a trial court's factual findings made at a hearing on a motion to suppress for clear error.  *People v Hill*, 299 Mich App 402, 405; 829 NW2d 908 (2013).  A finding of fact is clearly erroneous where, after reviewing the record as a whole, this Court is left with a definite and firm conviction that the trial court made a mistake.  *People v Bolduc*, 263 Mich App 430, 436; 688

-1-

NW2d 316 (2004). Where the matter requires the relevant facts to be considered against the backdrop of constitutional law, this Court reviews these matters de novo. *Hill*, 299 Mich App at 405.

Both the state and federal constitutions protect against unreasonable searches and seizures. *People v Lemons*, 299 Mich App 541, 545; 830 NW2d 794 (2013). "The Fourth Amendment of the United States Constitution is generally understood to provide the same protections as article 1, § 11 of the Michigan Constitution." *Id.*, citing *People v Slaughter*, 489 Mich 302, 311; 803 NW2d 171 (2011). The Fourth Amendment does not prohibit all searches, only those that are unreasonable. *Slaughter*, 489 Mich at 311. When evaluating the constitutionality of a search, this Court must focus on the reasonableness of the search, as that is the guiding inquiry pursuant to the Fourth Amendment. *Lemons*, 299 Mich App at 545. This inquiry is very fact-specific and is dependent on the circumstances of each case. *Id*.

Here, the firearms at issue were seized under the plain view doctrine.[1] "The plain view doctrine allows police officers to seize, without a warrant, items in plain view if the officers are lawfully in a position from which they view the item, and if the item's incriminating character is immediately apparent." *People v Champion*, 452 Mich 92, 102; 549 NW2d 849 (1996).

> A fundamental characteristic of the doctrine is that it is exclusively a seizure rationale. No searching, no matter how minimal, may be done under the auspices of the plain view doctrine. Another fundamental characteristic of the doctrine is that, unlike most exceptions to the warrant requirement, it is not predicated on exigent circumstances. Instead, it is permitted in the interest of police convenience. It would be unreasonably inconvenient to require the police, once they have made a valid intrusion and have discovered probable evidence in plain view, to leave, obtain a warrant, and return to resume a process already in progress. [*Id.* (citations omitted).]

There was no dispute at the evidentiary hearing that the located firearms were plainly visible from the officer's perspective when he looked into the bedroom, as they were lying on the floor in the open. Thus, to resolve this issue, we must decide whether the officer's presence, while looking into the bedroom was lawful.

"It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v New York*, 445 US 573, 586; 100 S Ct 1371; 63 L Ed 2d 639 (1980) (quotation marks omitted). However, in the instant case, the police gained entry into defendant's home at 14747 Liberal under the authority of a felony arrest warrant for Grayse. "[F]or Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Id.* at 603; see also *Steagald v United States*, 451 US 204, 214 n 7; 101 S Ct 1642; 68 L Ed 2d 38 (1981).

---

[1] While a warrant was involved in the raid on defendant's home, it was an arrest warrant, not a search warrant.

Defendant, while relying on *Steagald*, claims that because Grayse did not live at 14747 Liberal, the arrest warrant necessarily was insufficient to allow the officers to gain entry to the home. The narrow issue the *Steagald* Court was asked to consider was whether the arrest warrant sufficiently protected the Fourth Amendment rights of persons not named in the arrest warrant, whose homes are searched without the authority of a search warrant, and where no exigent circumstances existed. *Steagald*, 451 US at 212.

In *Steagald*, the DEA agents in that case relied on an arrest warrant for Ricky Lyons to enter the home of another person looking for Lyons, grounded in the belief that Lyons "might be a guest" in the home. *Id*. at 213. Lyons was not found in the home, but the agents did find cocaine, which was later used as a basis to charge the resident of the home. *Id*. at 206-207. The Court held that the arrest warrant for Lyons did nothing to protect the third party's right to be free from unreasonable searches of his home, and therefore, the search was tantamount to a warrantless search that violated the Fourth Amendment. *Id*. at 213, 216.

The *Steagald* Court recognized that an arrest warrant "primarily serves to protect an individual from an unreasonable seizure" because it is grounded on a showing of probable cause. *Id*. at 213. In contrast, the probable cause showing for a search warrant "safeguards an individual's interest in the privacy of his home and possessions against the unjustified intrusion of the police." *Id.* The Court further explained,

> Because an arrest warrant authorizes the police to deprive a person of his liberty, it necessarily authorizes a limited invasion of that person's privacy interest when it is necessary to arrest him in his home. This analysis, however, is plainly inapplicable when the police seek to use an arrest warrant as legal authority to enter the home of a third party to conduct a search. Such a warrant embodies no judicial determination whatsoever regarding the person whose home is to be searched. [*Id*. at 214 n 7.]

Consequently, the salient holding from *Steagald* is that the police may not rely on an arrest warrant that specifies a certain individual in order to search the home of a third party who is not named in the arrest warrant. *Id*. at 213-214, 216.

It is clear, however, that the facts in the instant matter are distinguishable from *Steagald*. Here, the officers, unlike the officers in *Steagald* who thought the subject of their arrest warrant (Lyons) may be present because he "might be a guest" at the home, were acting on the justified belief that the subject of their arrest warrant (Grayse) actually lived at the home they entered. Sergeant Campau conducted a diligent search of LEIN and the Secretary of State database the day before the raid, which revealed 14747 Liberal as Grayse's last address of record.[2] Defendant relies on the fact that, while Grayse had initially been paroled to the 14747 address, Grayse later informed his parole officer that he had moved to another address. Defendant contends that the police should have learned of this new address by inquiring with the Department of Corrections.

---

[2] In fact, the Secretary of State database showed that the 14747 address was Grayse's *current* address, as his license was valid through 2017.

But defendant has not identified any case law that *requires* the police to make further investigation into the address of the subject of an arrest warrant, such as following up with the subject's parole officer, when they already have multiple sources that identify a particular address. Given that all the information the police had pointed to 14747 Liberal as being Grayse's address, the court did not clearly err in finding that the police reasonably believed that Grayse lived there. As such, there were no grounds to deem the arrest warrant and its subsequent execution illegal. See *Florida v Royer*, 460 US 491, 514; 103 S Ct 1319; 75 L Ed 2d 229 (1983) (providing that the lynchpin in all Fourth Amendment analysis is "reasonableness").

Furthermore, defendant's ultimate desire was to suppress the firearms as the fruit of an illegal search. The "exclusionary rule" bars the use of disputed evidence at trial when there has been a violation of a defendant's Fourth Amendment rights. *People v Short*, 289 Mich App 538, 544; 797 NW2d 665 (2010). However, because the purpose of the rule is to deter police *misconduct*, it serves no purpose when the police act in good faith. *Id.*, citing *United States v Leon*, 468 US 897, 918; 104 S Ct 3405; 82 L Ed 2d 677 (1984). In applying the exclusionary rule, the court must weigh the benefits of the resulting deterrence of police misconduct against the costs incurred by preventing the introduction of otherwise valid evidence. *Short*, 289 Mich App at 544. Here, because the officers acted reasonably in their investigation into Grayse's address, there would be little point in excluding the evidence in the instant case just because their information regarding Grayse's residence ultimately was (purportedly) inaccurate.[3]

In sum, because the information in the arrest warrant was consistent with the officers' reasonable belief that Grayse lived at the 14747 Liberal address, as verified by the information contained in LEIN and the Secretary of State records, this takes the case outside the ambit of *Steagald*, and the officers' entry into that home in search of Grayse was legal. The fact that Grayse may have resided elsewhere at the time is not determinative. Therefore, because the officers had a legal right to be in the house and see the firearms at issue, they were properly discovered under the plain view doctrine. As a result, the trial court did not err in denying defendant's motion to suppress.

## II. PROSECUTORIAL MISCONDUCT

Defendant raises several allegations of prosecutorial misconduct. To preserve a claim of misconduct on the part of the prosecutor, a defendant is required to advance a contemporaneous objection and seek a curative instruction from the lower court. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). Defendant did not raise objections to the challenged conduct in the trial court. Accordingly, these issues are not properly preserved, and we review them for plain error affecting defendant's substantial rights. *People v Thomas*, 260 Mich App 450, 453-454; 678 NW2d 631 (2004). Thus, in this context, reversal is only required when a curative instruction would not have not alleviated any prejudicial effect. *People v Ackerman*, 257 Mich App 434, 449; 669 NW2d 818 (2003).

---

[3] We offer no view on whether the information was indeed accurate or not, and as previously discussed, the trial court did not make an explicit finding on this point either.

To assert a successful claim of prosecutorial misconduct, defendant must make a showing that he was denied a fair and impartial trial. *People v Rodriguez*, 251 Mich App 10, 29; 650 NW2d 96 (2002). Prosecutors are given significant latitude with their arguments and conduct at trial. *People v Cooper*, 309 Mich App 74, 90; 867 NW2d 452 (2015). This Court reviews a prosecutor's comments in context, viewed against defense counsel's arguments, and considers the relationship of the comments to the evidence admitted at trial. *People v Seals*, 285 Mich App 1, 22; 776 NW2d 314 (2009). When stating inferences and conclusions arising from the evidence, a prosecutor is not required to use the blandest terms. *People v Launsburry*, 217 Mich App 358, 361; 551 NW2d 460 (1996).

Defendant first contends that the prosecutor improperly vouched for the credibility of a police officer witness. A prosecutor is not permitted to vouch for a witness's credibility to the extent that it appears he has special knowledge regarding whether that witness is truthful. *Cooper*, 309 Mich App at 90. Viewing the prosecutor's closing argument in context, it is evident that rather than stating that the police officer was worthy of belief and vouching for his credibility, the prosecutor was pointing out to the jury that this case indeed presented a credibility contest between the officer and defendant, and the prosecutor merely invited the jury to use its own common sense and life skills in determining who to believe. We find that this was consistent with the court's own instructions it provided to the jury and perceive no error. Moreover, the trial court instructed the jurors that the arguments of counsel were not evidence, and that it was up to the jurors to decide what evidence to believe and how to evaluate a witness's credibility. The trial court also instructed the jury that testimony from a police officer "is to be judged by the same standards [the jury] would use to evaluate the testimony of any other witness." "Jurors are presumed to follow their instructions." *People v Unger*, 278 Mich App 210, 237; 749 NW2d 272 (2008). Regardless, to the extent that any error was introduced, a curative instruction would have alleviated any prejudice, thereby precluding reversal on this ground. *Ackerman*, 257 Mich App at 449.

Defendant next contends that prosecutor impermissibly tried to arouse the jury's passions when he stated that one of the guns recovered did not appear to have a sporting purpose and was "designed for quick access and use on people." While we agree that the comment was not particularly relevant, we do not believe that it worked to deny defendant a fair trial. Further, had defense counsel timely objected, a curative instruction would have alleviated any prejudice to defendant. *Id.* Under these circumstances, defendant has not demonstrated that this comment amounted to plain error affecting his substantial rights.

Defendant also complains that the prosecutor misstated the evidence during his closing argument, when he said:

> All the testimony regarding the broken padlock and the broken door you only heard from one person, Mr. Johnson. Let me ask you this. Does he have any particular motive or reason to lie?
>
> He admitted there are no photographs of that broken padlock or broken door frame in existence of any kind. They just don't exist.

Defendant's assertion on appeal that the prosecutor's statement was a misstatement of the evidence is belied by the record. During defendant's cross-examination, the following exchange took place:

> *Q.* So you don't have any pictures of the broken door and the broken padlock?
>
> *A.* No.
>
>            * * *
>
> *Q.* There's not a single picture of that broken padlock, is there?
>
> *A.* No, sir.

Defendant relies on his subsequent comment during recross-examination, where he admits that he has other photos (although not admitted into evidence) on his Facebook page that, while they did not show the door being broken, showed "the padlock." Notably, defendant did not specify that the padlock was "broken" in those pictures.[4] Accordingly, the prosecutor comments were based on and consistent with the evidence, and defendant has not established any plain error.

Finally, defendant complains that the prosecutor improperly appealed to the civic duty of the jury during closing argument. It is improper for a prosecutor to "resort to civic duty arguments that appeal to the fears and prejudices of jury members." *People v Bahoda*, 448 Mich 261, 282-283; 531 NW2d 659 (1995).

In arguing that the prosecutor improperly asked the jurors to consider their civic duty, defendant points to a comment the prosecutor made during his closing argument in rebuttal:

> And the felony firearm, we'll talk about the possession of a firearm during the commission of a felony. The law is clear that if you possess a gun in certain circumstances it's an extra crime and one of those crimes is if you're a felon you committed a specified felony and you possess a gun they can also charge you with an additional crime, possession of the firearm at the time you possessed a firearm.
>
> Yeah, okay, but that's what the legislature says and there's a reason for that. That they've decided that certain people can't have guns and there should be a punishment or penalty for those people who have guns in violation of the law.

---

[4] In fact, it is clear that he was not claiming that the padlock was broken in those pictures. As discussed in Part IV of this opinion, *infra*, defendant claims that the Facebook photos should have been admitted into evidence to show that the room was kept locked by his brother, which acted to keep defendant out of the room and therefore unable to "possess" the firearms.

Rather than appealing to the jury's sense of civic duty, this comment was simply the prosecutor's attempt to explain to the jury what the prosecutor characterized as a confusing intersection of the law of felon-in-possession and felony-firearm, noting that the Legislature was responsible for the drafting of these laws. The prosecutor obviously saw the need to give this explanation in response to the following defense counsel's comment:

> What does possession mean? And are these firearms? And if you're in possession or receipt of them then can you also be committing a separate crime of possessing them during the commission of another felon[y]; to-wit, possession o[r] receipt? Do you see how nonsensical it is?

The prosecutor's comment did nothing to deprive defendant of his right to a fair trial; rather, it was responsive to defense counsel's argument. And even if the prosecutor's comment could be characterized as improper, a curative instruction would have alleviated any prejudice to defendant, and reversal is not warranted on this basis. *Ackerman*, 257 Mich App at 449.

Furthermore, because none of defendant's raised issues of prosecutorial misconduct has any merit, we reject his claim that the cumulative effect of these errors deprived him of a fair trial. See *id.* at 454.

## III. AMENDMENT OF THE INFORMATION

Defendant argues that the trial court erred when it allowed the prosecutor to amend the information during trial. This Court reviews for an abuse of discretion the trial court's decision whether to allow an amendment of the information. *People v McGee*, 258 Mich App 683, 686-687; 672 NW2d 191 (2003). To the extent that this issue requires the interpretation of a statute or a court rule, this Court reviews such legal questions de novo. *Id.* at 686. Defendant's argument on appeal implicates his due process right to fair notice of the charges against him. This Court reviews constitutional issues de novo. *People v Patton*, 285 Mich App 229, 236; 775 NW2d 610 (2009).

This Court has recognized that a defendant's right to be fairly apprised of the charges against him stems from the Sixth Amendment, which is applicable to the states by way of the Fourteenth Amendment. *People v Darden*, 230 Mich App 597, 600; 585 NW2d 27 (1998). Further, the constitutional due process right to notice of the charge against a defendant "is not some abstract, legal technicality," and it encompasses the very important right of a defendant to know the charges against him and to be able to fully respond. *Id.* at 601. To establish a due process violation, a defendant must be able to make a showing of prejudice to his defense. *McGee*, 258 Mich App at 700.

The relevant statute, MCL 767.76, governs the amendment of "indictments," but in Michigan, unless there is specific notation otherwise, all laws pertaining to prosecution on indictment likewise apply to all prosecutions by information. *Id.* at 687, citing MCR 6.112(A). Thus, under the statute,

> [a]n information may be amended at any time before, during, or after trial to cure any defect, imperfection, or omission in form or substance, including a variance between the information and the proofs, as long as the accused is not prejudiced

by the amendment and the amendment does not charge a new crime. [*People v Higuera*, 244 Mich App 429, 444; 625 NW2d 444 (2001), citing MCL 767.76 and *People v Stricklin*, 162 Mich App 623, 633; 413 NW2d 457 (1987); see also MCR 6.112(H).]

In the instant matter, the prosecutor notified defense counsel and the trial court at the start of trial of his intention to seek an amendment of the information. The prosecutor subsequently renewed his request at the close of the prosecution's case. The original information only alleged that defendant "did possess" the firearms in counts I and II for the two felon-in-possession charges. The trial court granted the prosecutor's request to amend the information to say that defendant "did possess and/or receive" the firearms to match the proofs[5] and to dovetail with the statutory language of MCL 750.224f.[6]

Defendant complains that he was prejudiced by the amendment of the information where the jury expressed confusion about the amendment. First, while the jury did express a desire to understand *why* the language of the information was amended, the record does not support defendant's assertion that the jury was confused about the substance of the amended information. Second, the change was so minor that it could not have possibly prejudiced defendant in any way. In that regard, it is worthwhile to note that defendant was *acquitted* of the two counts whose language was modified. He was convicted only of count III, felony-firearm, which was not altered by the amendment. Accordingly, defendant has not made the requisite showing of prejudice as a result of the amendment, and the trial court did not abuse its discretion in allowing the amendment.

## IV. FACEBOOK PHOTOS

Defendant contends that he was denied his constitutional right to present a defense when the trial court denied his request to introduce evidence of photographs from his Facebook page at trial. Defendant wanted the jury to see photos of a padlock securing his brother's bedroom door in the house. It is behind this door that defendant claims the firearms were discovered by the police. His theory is that because the door was padlocked and because he had no key to the lock, he could not be convicted of possessing anything inside the room.[7]

---

[5] It was the prosecution's theory that because defendant admitted to the police that he got the firearms from his brother, he "received" them.

[6] MCL 750.224f(1) and (2) provides that a "person convicted of a felony shall not *possess*, use, transport, sell, purchase, carry, ship, *receive*, or distribute a firearm in this state . . . ." (Emphasis added.)

[7] Defendant testified that, even after his brother died some weeks before the police raid, he kept the room in its locked condition.

While defendant sought to introduce the photos into evidence,[8] he never objected at the trial court that their exclusion denied him the right to present a defense. Accordingly, this issue is not preserved, see *People v Danto*, 294 Mich App 596, 605; 822 NW2d 600 (2011) (stating that "an objection on one ground is insufficient to preserve an appellate argument based on a different ground"), and we review it for plain error affecting defendant's substantial rights, *People v Carines*, 460 Mich 750, 764; 597 NW2d 130 (1999).

A criminal defendant has a constitutionally protected right to advance a defense. *People v Steanhouse*, ___ Mich App ___; ___ NW2d ___ (Docket No. 318329, issued October 22, 2015), slip op, p 10. The right to present a defense is not absolute and will yield to rules of procedure and evidence that are necessary to protect fairness and reliability in the criminal trial process. *People v Hayes*, 421 Mich 271, 279; 364 NW2d 635 (1985); *Steanhouse*, ___ Mich App at ___ (slip op at 10).

Here, the record reflects that defendant, after he testified on the third day of trial, sought to introduce these Facebook photos into evidence. In doing so, defendant failed to comply with the trial court's pretrial discovery order, which required him to notify the prosecution before trial about the existence of any document or photograph he intended to use at trial. The trial court was within its discretion to deny defendant's tardy request. MCR 6.201(J); *People v Davie (After Remand)*, 225 Mich App 592, 597-598; 571 NW2d 229 (1997). It was very clear that the trial court was relying on its own rules to ensure the integrity, reliability, and efficiency of the trial court process. In denying defendant's request, the trial court correctly noted that, this being the first time the photographs were mentioned, the prosecution was unable to vet them. This is particularly important because the issue defendant intended to raise—the door was kept locked, which prevented him from knowing (and possessing) what was inside, including any firearms— involved an analysis of what did the photos purport to represent and, more importantly, when were they taken.[9] Given the late nature of defendant's request, the prosecution would have been unable to do any of these things.

Moreover, defendant was able to present his theory of the case when he testified extensively concerning the existence of the padlocked door of his brother's bedroom and how he was not aware of the existence of the guns in the home. It is important to note that defendant was able to introduce into evidence other photographs of the bedroom—they just did not capture the status of the door or lock. Thus, defendant exhibited an ability to adhere to the court's rules with regard to those photographs, and he offers no explanation why he was unable to follow that procedure for the Facebook photos. Under these circumstances, the trial court did not abuse its

---

[8] Actually, defendant did not have any physical photos to introduce. Instead, he wanted to allow the jury to electronically access his Facebook page to view the photos. But for our purposes, we simply will consider the issue to be one of admitting the photos into evidence.

[9] For instance, any photos that were taken months before defendant's brother died (as was the case here) would have only slight relevance compared to ones that were taken some time after his brother died but before the police seized the firearms.

discretion when it denied defendant's request to admit any Facebook photographs into evidence, and defendant has not shown how he was denied his constitutional right to present a defense.

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant asserts that he was denied the effective assistance of counsel both before trial and during trial.[10]  To properly preserve a claim of ineffective assistance of counsel, a defendant must move for a new trial or an evidentiary hearing in the trial court.  *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008).  A claim of ineffective assistance of counsel presents a mixed question of law and fact.  *Id.*  This Court reviews a lower court's findings of fact for clear error and the constitutional issues de novo.  *Id.*  Because defendant did not move for a new trial or an evidentiary hearing, this Court's review is limited to mistakes that are apparent from the record.  *People v Rodgers*, 248 Mich App 702, 713-714; 645 NW2d 294 (2002).

To prevail on a claim of ineffective assistance of counsel in this Court, defendant must first establish that his trial counsel's conduct in the lower court did not meet an objective standard of reasonableness.  *People v Lopez*, 305 Mich App 686, 694; 854 NW2d 205 (2014).  Defendant also bears the onus of showing that he was prejudiced, specifically that but for his trial counsel's errors, there exists a reasonable probability that the result of his trial would have been different.  *Id.*, citing *Strickland v Washington*, 466 US 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984).

This Court will not interfere with defense counsel's judgment regarding matters of trial strategy or second-guess defense counsel's decisions with the benefit of hindsight.  *Unger*, 278 Mich App at 242-243.  Also, defendant must make out the factual predicate for his claim.  *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999); *People v Wood*, 307 Mich App 485, 528; 862 NW2d 7 (2014).  Defense counsel's performance in not tendering certain evidence will only rise to the level of ineffective assistance of counsel where it deprived defendant of a substantial defense.  *People v Jackson (On Reconsideration)*, ___ Mich App ___; ___ NW2d ___ (Docket No. 322350, issued December 3, 2015), slip op, p 11.  "A substantial defense is one that might have made a difference in the outcome of the trial."  *Id.*

On appeal, defendant's claim of ineffective assistance of counsel is essentially two-fold: (1) his trial counsel's performance was deficient where he did not communicate with defendant before trial, and (2) both counsel's performances were deficient where they failed to comply with the trial court's pretrial discovery order in relation to the admission of the Facebook photos.

Regarding the issue of his lack of communication with trial counsel, defendant notes that he sought an adjournment the day of trial because the day before trial, when trial counsel attempted to talk with defendant in jail, defendant was never produced.  Our close review of the lower court record did not yield any mistakes apparent from the record.  Instead, the record clearly reflects that trial counsel swiftly prepared for trial and that trial counsel stood ready,

---

[10] Defendant was represented by two different counsels during the course of these proceedings. Where appropriate, we will refer to them as "trial counsel" and "pretrial counsel" to distinguish.

willing, and prepared to proceed with defendant's trial. Defendant offers no explanation as to what trial counsel did incorrectly or, more importantly, how the failed attempt to meet the day before prejudiced him. It is important to note that this is not an instance where trial counsel never met with defendant before trial. Defendant at trial did not dispute that he met with trial counsel on or around June 19, 2014, and trial counsel stated on the first day of trial on July 10, 2014, that he was prepared and ready to proceed. Defendant's cursory statement that he "was clearly prejudiced," with nothing more, is insufficient to establish the necessary factual predicate to support his claim. See *Hoag*, 460 Mich at 6.

Concerning defendant's alternate claim—that his pretrial counsel's and trial counsel's performances were constitutionally infirm because they did not comply with the trial court's pretrial orders concerning discovery—the decision to not tender evidence will only amount to ineffective assistance of counsel where defendant was deprived of a substantial defense. *Jackson*, ___ Mich App at ___ (slip op at 11). First, defendant points to nothing in the record establishing that his pretrial counsel was even aware of the Facebook photos to be able to take steps to move for their admission. Thus, he has failed to establish a factual predicate for this claim. See *Hoag*, 460 Mich at 6. Second, with respect to trial counsel, trial counsel stated at trial that he was "not able to find" the photos that defendant alleged existed. With nothing more, we decline to characterize trial counsel's failure to seek the admission of the unseen and unproduced photos to be unreasonable. Furthermore, even if the Facebook photos had been introduced into evidence, there would not have been a reasonable probability that the result of the trial would have been different. Defendant testified that the Facebook photos were taken many months earlier, in December 2013. Thus, even if the photos reflected that the room was clearly locked at that time, it would not speak to the lock's status some four months later, let alone sometime after defendant's brother had passed away. As a result, defendant simply is unable to demonstrate that producing the alleged photographs of the bedroom door being padlocked in December 2013 might have made a difference in the outcome of his trial. Moreover, defendant was able to fully advance his defense during his own testimony that the firearms in question were not his, that they belonged to his brother, and that he had no knowledge of or access to them because they were behind a padlocked door. Under these facts, defendant was not deprived of a substantial defense.

Affirmed.

/s/ Henry William Saad
/s/ Kurtis T. Wilder
/s/ Christopher M. Murray

-11-